USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/19/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MALCOLM GALLIMORE,

                Plaintiff,

-against-

PEDRO FELICIANO, individually and
DETECTIVE FRANK LORE, individually,

                Defendants.

No. 14-cv-1519 (NSR) (LMS)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Plaintiff Malcolm Gallimore brings this action against Pedro Feliciano and Frank Lore under 42 U.S.C. § 1983 for purported violations of his Fourth Amendment, Fifth Amendment, Sixth Amendment, and Fourteenth Amendment rights in connection with a robbery-assault prosecution. Although Plaintiff had been in custody for violation of probation, he seeks to recover for the additional time that he remained in custody resulting from delays caused by the unlawful robbery-assault prosecution. Defendants have separately moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, the motions are GRANTED in part and DENIED in part.

## BACKGROUND

*A.   The Probation Violation*

    Feliciano is a probation officer employed by the County of Westchester. (Compl. ¶ 11, ECF No. 1.) Plaintiff, who had been on probation for three years and six months as of January 2012, was one of Feliciano's probationers. (*Id.* ¶¶ 13-15.) On January 12, 2012, Feliciano filed a petition for violation of probation against Plaintiff. (*Id.* ¶¶ 16-17.) A hearing was scheduled to take place on February 8, 2012. (*Id.* ¶ 21.) Before the hearing, Plaintiff had allegedly presented

evidence to the Assistant District Attorney ("ADA") and Feliciano demonstrating that Feliciano had exaggerated or falsified some of the allegations against Plaintiff. (*Id.* ¶¶ 22-24.)

Feliciano allegedly sought to delay the hearing to keep Plaintiff incarcerated and to avoid being exposed as having exaggerated or falsified allegations against Plaintiff. On January 25, 2012, Feliciano saw wanted posters for a robbery-assault, called the lead investor, Frank Lore, and told him that Plaintiff, his probationer, was the man on the wanted poster. (*Id.* ¶¶ 29-30.) Then Feliciano allegedly told the ADA in Plaintiff's probation matter that Plaintiff had committed the robbery-assault, and as a result the February 8 hearing was adjourned, while Plaintiff remained in custody. (*Id.* ¶¶ 47-48.) At all times, Feliciano allegedly knew that his 6'2½" probationer could not have been the suspect, who was described on the poster as 5'9".

B.  The Robbery-Assault

The robbery-assault had occurred on October 18, 2011 at the White Plains Metro-North train station. On the date of the crime, both the victim, Robert Muriel, and the sole witness, William Bowen, gave statements to MTA employees. (*Id.* ¶¶ 33-34.) Muriel described the attacker as between 5'10" and 6'0" and in his late teens to early twenties. (*Id.* ¶ 34; Joseph Decl. Ex. 2, at 2, ECF No. 29-2.) Bowen described the attacker as being 5'9" and in his late teens to early twenties. (Compl. ¶ 33.) The Complaint alleges that Muriel and Bowen were intoxicated and that Muriel was under the influence of two illicit drugs. (*Id.* ¶¶ 31-32.) The MTA distributed wanted posters that included screengrabs of the suspect from surveillance videos and described the suspect as 5'9". (*Id.* ¶ 27.)

After receiving the tip from Feliciano based on the wanted poster, Detective Lore constructed a photo array. Lore included a seven-year-old photograph of Plaintiff in the array even though more recent photos were available, allegedly to make Plaintiff appear closer to the reported age of the suspect. (*Id.* ¶¶ 34-36.) Lore also allegedly stacked the "fillers" with

photographs of much older men, with the exception of one other teenager.  (*Id.*)  Lore met with Bowen on February 3, 2012 and Muriel on March 13, 2012, and they both selected Plaintiff from the array.  (*Id.* ¶¶ 37-40.)  Before conducting the identification, however, Lore allegedly told Muriel and Bowen that Plaintiff was a suspect and what Plaintiff looked like.  (*Id.*)

Lore signed a felony complaint dated April 30, 2012 charging Plaintiff with attempted robbery.  A grand jury convened and indicted Plaintiff for attempted robbery and assault on May 3, 2012 and Plaintiff was arraigned on May 16, 2012.  (*Id.* ¶ 63.)  The grand jury based the indictment on (1) Feliciano's testimony that he was "90 percent" certain that Plaintiff was the man in the surveillance video, (2) Muriel's testimony that the perpetrator was 6'0", and (3) Bowen's testimony that the perpetrator was between 6'2" and 6'3".  (*Id.* ¶ 58.)

  C. *The Charges Are Dismissed*

The case allegedly fell apart thereafter.  On April 5, 2012, Lore came into possession of Plaintiff's cell phone, which showed that Plaintiff had been texting at the time of the crime; the surveillance videos allegedly show that the suspect was not texting.  (*Id.* ¶ 45.)  Plaintiff also submitted the report of a facial recognition expert who opined that Plaintiff was not the man in the surveillance video, and the Westchester County Forensic Laboratory confirmed this finding.  (*Id.* ¶ 73.)  Moreover, Feliciano recanted his identification.  (*Id.* ¶ 75.)  Plaintiff was released on consent on July 25, 2012.  (*Id.* ¶ 74.)  The prosecutor filed a motion to dismiss the charges on the merits, which was granted on December 5, 2012.  (*Id.* ¶¶ 76-77.)

In the probation matter, Plaintiff ultimately pled guilty to the lesser offense of a single instance of failure to report.  (*Id.* ¶¶ 80-81.)  Plaintiff received a sentence of 5 months, which was reduced to 100 days after good time credits.  (*Id.*)  Plaintiff was incarcerated from February 1, 2012 to July 25, 2012 for a total of 176 days.  (*Id.*)  Plaintiff alleges that the additional 76 days are attributable to the robbery-assault prosecution, which violated his constitutional rights.

## STANDARD ON A MOTION TO DISMISS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010). A court should accept non-conclusory allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008). "[T]he duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir. 1998)).

## DISCUSSION

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) "that the defendants have deprived him [or her] of a right secured by 'the Constitution and laws' of the United States" and (2) "that the defendants acted under 'color of state law' in infringing his [or her] constitutionally protected right." *Stevens v. Dutchess County, N.Y.*, 445 F. Supp. 89, 91 (S.D.N.Y. 1977) (quoting *Van Horn v. Lukhard*, 392 F. Supp. 384, 386 (E.D. Va. 1975)). Defendants' arguments on the instant motions focus on the first element. Plaintiff advances (at

least) seven theories: (1) malicious prosecution; (2) prolonged detention resulting from the failure to investigate or withholding of exculpatory evidence; (3) fabrication of evidence; (4) false imprisonment; (5) abuse of process; (6) Fifth Amendment; and (7) Confrontation Clause. The Court will treat each in turn.

I.     **Malicious Prosecution**

Plaintiff has stated a malicious prosecution claim against both Defendants. To assess a Fourth Amendment malicious prosecution claim under § 1983, this district looks to New York law. *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002). Under New York law, a plaintiff must prove "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Stampf v. Long Island R. Co.*, 761 F.3d 192, 198 (2d Cir. 2014). Section 1983 imposes a fifth element: "there must be a seizure or other perversion of proper legal procedures implicating the claimant's personal liberty and privacy interests under the Fourth Amendment." *Rolon v. Henneman*, 517 F.3d 140, 147 (2d Cir. 2008); *see also Rohman v. N.Y.C. Transit Auth. (NYCTA)*, 215 F.3d 208, 215 (2d Cir. 2000).

   A.     *Initiation*

The initiation element is met with respect to both Feliciano and Lore. "Initiation" in this context is "a term of art." *Rohman*, 215 F.3d at 217. "To initiate a prosecution, a defendant must do more than report the crime or give testimony." *Manganiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010). He must "play[ ] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Id.* (quoting *Rohman*, 215 F.3d at 217).

5

Lore does not dispute that he "initiated" the prosecution. He was the lead MTA Detective investigating the robbery-assault, signed the complaint that instituted the charges, and took the key witnesses' statements. Lore initiated the prosecution.

Feliciano presents a closer question, but his alleged conduct also meets the "initiation" standard. Courts have distinguished between merely reporting a crime or giving testimony and playing an "active role" in the prosecution; only the latter constitutes "initiation." *See, e.g.*, *Stampf*, 761 F.3d at 199-200; *TADCO Const. Corp. v. Dormitory Auth. of the State of N.Y.*, 700 F. Supp. 2d 253, 270 (E.D.N.Y. 2010) ("Giving information to the police that is known to be false qualifies as the commencement of a prosecution." (internal quotation marks omitted)); *Arum v. Miller*, 273 F. Supp. 2d 229, 234 (E.D.N.Y. 2003) (finding that a defendant who had called the police and filed a trespass complaint seeking to remove the plaintiff from the school's premises had "initiated or instigated" the prosecution); *Kirchner v. County of Niagara*, 969 N.Y.S.2d 277, 281 (App. Div. 2013) (ruling that the medical examiner in a prior investigation for murder had "played such an active role in the prosecution" by providing false findings to police and the grand jury as to the cause of death); *Barrett v. Watkins*, 919 N.Y.S.2d 569, 572 (App. Div. 2011) (finding that a defendant did not "initiate" the prosecution where he signed a trespass complaint, provided the police with information regarding the location where the incident occurred, and testified before the grand jury); *Brown v. Sears Roebuck & Co.*, 746 N.Y.S.2d 141 (App. Div. 2002) (finding that the defendant had not initiated the proceeding where he provided information to police and signed a complaint but there was no evidence that the police officer's determination to arrest plaintiff rested on the defendant's statements).

Although the boundaries of initiation are not always clear, this Court finds *Stampf* analogous here. In *Stampf*, the plaintiff sued a coworker for malicious prosecution. *Stampf*, 761

F.3d at 196-97. The coworker had filed multiple reports with the MTA authorities falsely accusing the plaintiff of forcible touching, which resulted in the issuance of a desk appearance ticket to the plaintiff. *Id.* The Second Circuit held that it "was amply shown" by this conduct that the coworker "played an active role in the prosecution." *Id.* at 199-200. Here, Feliciano did not merely report a crime or furnish information that he honestly believed to be true. Allegedly driven by personal animus, he affirmatively injected himself into an ongoing investigation to falsely implicate Plaintiff as the perpetrator when he knew that to be false. The authorities would not otherwise have pursued Plaintiff at all. Although this is a close issue, the allegations are sufficient, at the motion to dismiss stage, to establish that Feliciano participated in the initiation of the prosecution.

  B.  *Favorable Termination*

  Neither party expressly contests the favorable termination element. However, Feliciano argues that Plaintiff's guilty plea to an unrelated probation violation bars recovery. Although framed as a general bar to Plaintiff's § 1983 action, the cases that Feliciano cites suggest that this argument is properly directed toward the favorable termination element.

  Plaintiff's guilty plea is not a bar. Feliciano attempts to analogize this case to *DiBlasio v. City of New York*, 102 F.3d 654 (2d Cir. 1996), and *Stein v. County of Westchester, N.Y.*, 410 F. Supp. 2d 175 (S.D.N.Y. 2006). (*See* Feliciano Mem. at 19-20, ECF No. 27.) In *DiBlasio*, a jury convicted the plaintiff of unlawful possession and sale of a controlled substance. 102 F.3d at 655. The plaintiff collaterally attacked the conviction and was successful. *Id.* On retrial, the jury convicted the plaintiff only on the charge of unlawful possession. *Id.* The plaintiff sued for malicious prosecution under § 1983. *Id.* The Second Circuit held that the plaintiff could not establish the "favorable termination" element notwithstanding the habeas writ because the plaintiff was ultimately convicted on one of the charges. *Id.* at 657-58. Similarly, in *Stein*, a jury

7

convicted the plaintiff of sexual abuse, sodomy, rape, unlawfully dealing with a child, and endangering the welfare of a child. 410 F. Supp. 2d at 176-77. The conviction was overturned on appeal, and the plaintiff subsequently pleaded guilty to three counts of endangering the welfare of a child and was re-sentenced to three years' custody. *Id.* at 177. The plaintiff sued for malicious prosecution under § 1983. *Id.* at 178. The court held that the plaintiff could not establish the "favorable termination" element, notwithstanding the overturned conviction, because the reversal did not "exonerate" the plaintiff and she pleaded guilty to lesser included offenses. *Id.* at 178-80. In both cases, the charges at issue in the § 1983 actions were related to charges on which the plaintiffs had been convicted or sentenced—they arose out of the same "criminal act, occurrence, episode or transaction" and the same prosecution. *DiBlasio*, 102 F.3d at 659; *Stein*, 410 F. Supp. 2d at 179. In either case, "a judgment in favor of the plaintiff would necessarily imply the invalidity of his [or her] conviction or sentence." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994); *see also Poventud v. City of New York*, 750 F.3d 121, 132 (2d Cir. 2014).

  The analogy is inapt. Here, the charges at issue in Plaintiff's § 1983 action—the robbery-assault—are wholly unrelated to the probation violation to which Plaintiff pleaded guilty. The robbery-assault charges were not dismissed as a part of Plaintiff's plea deal on the probation violation. They were dismissed independently when the prosecutor discovered evidence that conclusively established Plaintiff's innocence. Plaintiff was not convicted or sentenced for anything related to the robbery-assault. The probation violation arose out of a distinct and unrelated "criminal act, occurrence, episode or transaction" and a wholly separate prosecution. Plaintiff seeks recovery for only the portion of the time in custody that is attributable to the robbery-assault prosecution, and expressly disclaims entitlement to relief for any time attributable to the sentence for his violation of probation. Therefore, a judgment in

favor of Plaintiff would not "imply the invalidity" of his guilty plea or sentence. The favorable termination element is satisfied.

### C. Lack of Probable Cause

Plaintiff has also adequately alleged a lack of probable cause. Probable cause in malicious prosecution cases means "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003). Indictment by a grand jury "creates a presumption of probable cause" that a plaintiff can rebut only "by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Manganiello*, 612 F.3d at 162 (internal quotation marks omitted).

#### 1. The Grand Jury Indictment

Here, a grand jury indicted Plaintiff, raising a presumption of probable cause. But Plaintiff's allegations rebut that presumption. The indictment was allegedly based on: (1) Feliciano's testimony that he was "90 percent" sure that Plaintiff was the man described and depicted in the surveillance video, and (2) Muriel's and Bowen's testimony describing the perpetrator. First, Feliciano's testimony was allegedly false, as described above, because he knew that Plaintiff was not the man depicted in the video. Second, Plaintiff alleges that Muriel and Bowen did not have reliable recollections of the perpetrator because Muriel was under the influence of two illicit drugs and he and Bowen both were intoxicated during the crime. Because neither had reliable recollections, and because of Lore's misconduct, Muriel and Bowen allegedly lied about the perpetrator's appearance to implicate Plaintiff. Specifically, Plaintiff is 6'2½" tall, and the perpetrator was allegedly 5'9" tall. The Complaint alleges that Muriel had initially described the perpetrator as 5'10" to 6'0" tall, but after Lore fed him details of Plaintiff's appearance, Muriel told the grand jury that he thought the perpetrator was 6'0" tall. Similarly,

9

the Complaint alleges that Bowen had initially described the perpetrator as 5'9" tall, but after Lore fed him details of Plaintiff's appearance, Muriel told the grand jury that he thought the perpetrator was between 6'2" and 6'3" tall.  No other material evidence was presented to the grand jury that the grand jury could have relied on in finding probable cause.[1]  Accordingly, taking the allegations as true and granting all reasonable inferences in Plaintiff's favor, Plaintiff has adequately alleged that the indictment was a product of "fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith."  *Manganiello*, 612 F.3d at 162 (internal quotation marks omitted).  Plaintiff has rebutted the presumption of probable cause.

    2.    <u>Other Evidence</u>

Accepting Plaintiff's allegations as true, probable cause was lacking.  The only additional evidence aside from the grand jury evidence were the earlier photo array identifications made by Muriel and Bowen.  "The fairness of a photographic array depends on a number of factors, including the size of the array, the manner of presentation by the officers, and the array's contents."  *United States v. Maldonado-Rivera*, 922 F.2d 934, 974 (2d Cir. 1990).  Plaintiff alleges that Lore told Muriel and Bowen what Plaintiff looked like before asking them to identify the perpetrator from the array, used a seven-year-old photograph of Plaintiff in the array to better match the perpetrator's reported age when other, more recent photographs were available, and

---

[1] This is a peculiar case because the grand jury apparently had the opportunity to review the surveillance video and to see Plaintiff, who testified on his own behalf at the proceedings.  Neither party satisfactorily addresses this fact in their briefings.  Because Plaintiff was concededly not the man in the video but was nonetheless indicted, a jury could reasonably conclude that either:  (1) the man in the video looked like Plaintiff or (2) the video's quality was so poor that it was useless to the grand jury without supplemental testimony.  In the former scenario, the grand jury's own comparison of the video with Plaintiff's appearance could have furnished the requisite probable cause to support the indictment, independent of any of Defendants' alleged misconduct.  In the latter scenario, however, the grand jury's own comparison would be fruitless.  The grand jury would have had to rely on the tainted identifications of Feliciano, Muriel, and Bowen to indict Plaintiff.  In the latter scenario, the indictment would lack any independent basis for probable cause; it instead would be a product of "fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith."  *Manganiello*, 612 F.3d at 162.  Because both scenarios are plausible in light of the Complaint's allegations, the Court is constrained to adopt the latter scenario, which is favorable to the nonmovant, on a Rule 12(b)(6) motion.

stacked the "filler" photographs mostly with men who appeared much older, to make it more likely that Muriel and Bowen would select Plaintiff. Defendants' arguments focus solely on the purported similarity between Plaintiff's appearance and the "filler" photographs. (*See* Lore Mem. at 11-13 & n.3, ECF No. 23.) To Lore's credit, the mere use of an old photograph, or the mere use of older men as fillers, standing alone, do not establish that a photo array is unduly suggestive unless these factors raise a "substantial likelihood" that Plaintiff would be "singled out for identification." *People v. Griffin*, 973 N.Y.S.2d 5, 5 (App. Div. 2013), *leave to appeal denied*, 22 N.Y.3d 1199 (2014) ("The fact that the victim selected an old photo of defendant, which depicted him at younger age than his age at the time of the crime, did not render the procedure suggestive."); *cf. Craig v. City of Chicago*, No. 08 C 2275, 2011 WL 1196803, at *9 (N.D. Ill. Mar. 25, 2011) (holding that a jury could find an array unduly suggestive where officers used an eight-year-old photograph of the accused, more recent photographs of the accused were available, the filler photographs were mostly of older men, and the only photographs that matched the description of the perpetrator were that of the accused and one of the fillers). If the inquiry were limited to the contents of the array, this Court's analysis might be different. But Plaintiff asserts the additional, crucial allegation that Lore told Muriel and Bowen what Plaintiff looked like, and that Plaintiff was a suspect, before asking them to identify the perpetrator.[2] *See Maldonado-Rivera*, 922 F.2d at 974 (indicating that "the utterance of suggestive comments before an identification is made" is "inherently prejudicial"); *United States v. Acosta*, No. S1 12 CR 224 PGG, 2013 WL 1890337, at *16 (S.D.N.Y. May 6, 2013) (same)

---

[2] Lore largely ignores this allegation except for a lone footnote in which he argues that the allegations of Lore's misconduct are insufficiently specific. The Court finds this argument unpersuasive. (*See* Compl. ¶¶ 37-40 ("Frank Lore met with William Bowen and provided him details concerning the physical characteristics of Malcolm Gallimore and informed Bowen that Malcolm Gallimore was the suspect of the assault and robbery. During the aforesaid meeting between Frank Lore and William Bowen, Mr. Bowen based upon the information provided by Frank Lore changed his initial description of the individual involved in the robbery and assault so as to have the height match Malcolm Gallimore and then identified Malcolm Gallimore from the photo array.").)

(quoting *United States v. Thai*, 29 F.3d 785, 808 (2d Cir. 1994)); *see also Bouche v. City of Mount Vernon*, No. 11 CIV. 5246 SAS, 2012 WL 987592, at *6 (S.D.N.Y. Mar. 23, 2012) ("[B]ecause [the plaintiff] alleges that the police officers coerced [the witness] into falsely identifying [the plaintiff], it is plausible that the officers knew that they did not have the necessary probable cause to arrest him.").

The identifications made by Muriel and Bowen lack sufficient indicia of reliability otherwise. The Complaint alleges that Bowen was intoxicated during the crime, that Muriel was intoxicated and under the influence of two illicit drugs during the crime, and that there were significant discrepancies between Plaintiff's appearance, Muriel's and Bowen's initial descriptions of the perpetrator, and their later descriptions of the perpetrator. *See Newton v. City of New York*, 640 F. Supp. 2d 426, 446 (S.D.N.Y. 2009) ("The fact that V.J. had been drinking on the night of the incident does damage the reliability of her identification of Newton and the reasonableness of defendants' having relied on her selection of Newton's photo from the photo array."). Lore and Feliciano do not identify any other evidence (in the Complaint or in judicially noticeable records) to support probable cause. The cases cited by Defendants, the vast majority of which are rulings on motions for summary judgment, are distinguishable.[3] Taking the

---

[3] Usually, it is sufficient to simply note that a party's citations are distinguishable, but one instance of misquotation in Lore's papers warrants highlighting. Lore's papers attribute the following quotation to an in-district case, *Chimurenga v. City of New York*, 45 F. Supp. 2d 337, 343 (S.D.N.Y. 1999): "A defendant can be held liable for initiating a prosecution [only] when he fails to provide material information to an investigation or a prosecution and that omission influences the decision to arrest and prosecute." (Lore Mem. at 15 (alteration in original), ECF No. 23; Lore Reply at 6-7, ECF No. 30.) Counsel then cites *Chimurenga* throughout her probable cause argument for the proposition that, regardless of Lore's alleged misconduct, there was probable cause because he did not withhold evidence from the prosecutor. (Lore Mem. at 15, 16, 18; Lore Reply at 6-7, 10 n.9.) This is a non-sequitur, reflects a fundamental misunderstanding of the basic responsibilities of law enforcement, and brazenly misrepresents *Chimurenga*. The quote does not appear in the *Chimurenga* opinion or in any case from this district. The Court was able to locate part of the quote in an out-of-district case, *Noga v. City of Schenectady Police Officers*, 169 F. Supp. 2d 83, 90 (N.D.N.Y. 2001) ("A defendant can be held liable for initiating a prosecution when he fails to provide material information to an investigation or a prosecution and that omission influences the decision to arrest and prosecute."). But counsel altered the quote from *Noga*'s actual language by inserting the word "only," which materially changes the meaning. There is no support in *Noga*, *Chimurenga*, or broader federal law for the proposition that the *only* way to hold a defendant liable is by showing that he withheld information from the

allegations as true and granting reasonable inferences in Plaintiff's favor, Plaintiff has adequately alleged a lack of probable cause.

### D. Malice

Lore does not dispute the malice element. Feliciano's arguments as to malice are completely unpersuasive because (1) "lack of probable cause generally raises an inference of malice sufficient to withstand summary judgment" (and, by that logic, a Rule 12(b)(6) motion), *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 131 (2d Cir. 1997), and (2) the Complaint alleges that Feliciano acted out of personal dislike for Plaintiff as his probationer and to delay Plaintiff's probation violation hearing.

### E. Seizure

Plaintiff can also establish a seizure. Defendants assert two arguments. First, Defendants argue that Plaintiff cannot establish any seizure attributable to the alleged malicious prosecution because Plaintiff was already in custody as a result of his violation of probation. This argument ignores that Plaintiff spent 176 days in custody—76 days more than the 100-day sentence (after good time calculations) that he received for his violation of probation. The 76

---

prosecutor. *See, e.g.*, *Douglas v. City of New York*, 595 F. Supp. 2d 333, 342 (S.D.N.Y. 2009) ("In a situation where a police officer is accused of providing false information to a prosecutor that 'influences a decision whether to prosecute, he may be held liable for malicious prosecution.'"). Such a rule would yield perverse results, such as Lore's suggestion that even if he employed an unduly suggestive photo array procedure that was insufficient to establish probable cause, the array was somehow sanitized when he included it in the prosecutor's file. Additionally, the *Noga* and *Chimurenga* courts discussed a defendant's withholding of evidence in connection with the initiation element; Lore's attempt to import the analysis into the probable cause element serves only to further confuse matters. Worse still, had counsel bothered to read either *Chimurenga* or *Noga* rather than engaging in sound-bite argumentation, counsel would have realized that the courts in both of those cases denied summary judgment on plaintiff's malicious prosecution claims. When counsel misquotes and misstates the law to this degree, it harms counsel's credibility, increases the risk of error and uncertainty in the law, and wastes the Court's time and resources. *See* Fed. R. Civ. P. 11; Model Rules of Professional Conduct § 3.3(1) & cmt; Restatement (Third) of Law Governing Lawyers § 111 & cmt.b (2000) ("Tribunals must be able to rely upon advocates for reasonably accurate statements of law. No worthwhile purpose is served by permitting misstatements of law. The rule of the Section prohibits direct misstatement, such as misquotation of precedent. . . .").

13

days of custody in excess of Plaintiff's sentence constitutes a seizure attributable to the malicious prosecution.

Defendants next argue that the prosecutor's decision of what to present to the grand jury severed the chain of causation between Defendants' misconduct and Plaintiff's incarceration.  In general, "[o]nce a criminal defendant has been formally charged, the chain of causation between the officer's conduct and the claim of malicious prosecution is broken by the intervening actions of the prosecutor, thereby abolishing the officer's responsibility for the prosecution."  *Douglas*, 595 F. Supp. 2d at 342 (internal quotation marks omitted).  "There is an exception, however:  In a situation where a police officer is accused of providing false information to a prosecutor that 'influences a decision whether to prosecute, he may be held liable for malicious prosecution.'"  *Id.* (quoting *Chimurenga*, 45 F. Supp. 2d at 343); *see also Zahrey v. Coffey*, 221 F.3d 342, 352 (2d Cir. 2000) ("[I]t is not readily apparent why the chain of causation should be considered broken where the initial wrongdoer can reasonably foresee that his misconduct will contribute to an 'independent' decision that results in a deprivation of liberty.").  This case fits squarely within the exception.  Because there would have been no evidence implicating Plaintiff but for Defendants' alleged misconduct, Defendants influenced the decision to prosecute and the prosecution was the reasonably foreseeable result of their misconduct (indeed, it was Feliciano's design).  *Cf. Bouche*, 2012 WL 987592, at *7 (finding that the plaintiff had adequately stated a claim for malicious prosecution where he alleged "that the police department acted in bad faith in improperly creating and then using unreliable eyewitness identifications" notwithstanding the fact that the prosecutor made all post-arraignment decisions concerning the prosecution).  The Court will not dismiss the claim on the basis of causation at this stage of the proceedings.  Therefore, Plaintiff's malicious prosecution claim survives.

**II.     Failure to Investigate or Withholding of Exculpatory Evidence**

Defendants also seek to dismiss Plaintiff's claim that Defendants' alleged failure to investigate or withholding of exculpatory evidence sustained Plaintiff's detention. Defendants offer no valid basis to dismiss this claim. In *Russo v. City of Bridgeport*, 479 F.3d 196, 209 (2d Cir. 2007), the Second Circuit explained that even where there is probable cause to arrest a person, it does not empower the government to hold an accused indefinitely in the face of repeated protests of innocence. *Russo*, 479 F.3d at 206-07 (citing *Baker v. McCollan*, 443 U.S. 137 (1979)). Beyond the Sixth Amendment right to a speedy trial, the Fourth Amendment also protects against this type of abuse—a prolonged detention could be understood as a "seizure," which must be "reasonable." *Id.* at 206-07, 209. An accused may recover for unlawfully sustained detention if he establishes that "(i) he was wrongfully incarcerated for an unreasonable length of time; (ii) the defendant-officer, by expending reasonable cost and effort, could have conclusively established the plaintiff's innocence; (iii) the defendant-officer failed to do so; and (iv) the defendant-officer acted with a culpable mental state—i.e., with intent to unlawfully detain the plaintiff or deliberate indifference to his constitutional rights." *Thompson v. City of New York*, 603 F. Supp. 2d 650, 656 (S.D.N.Y. 2009). *Russo* indicated that the touchstone is whether the defendants' actions were objectively reasonable under the circumstances, including, *inter alia*, (1) the length of time of [the] wrongful incarceration, (2) the ease with which the evidence exculpating [the plaintiff] . . . could have been checked, and (3) the alleged intentionality of [the defendants'] behavior." *Id.*

Although the Complaint is not a model of clarity, Plaintiff adequately pleads this theory. Plaintiff pleads that his detention was prolonged. It lasted 76 days beyond his valid 100-day sentence. *See Russo*, 479 F.3d at 209 (finding that a 68-day detention "plainly was prolonged rather than short and carried constitutional implications"). Plaintiff identifies evidence that could

15

have conclusively established his innocence—including the surveillance video, which allegedly shows discrepancies between the perpetrator and Plaintiff's physical characteristics; Plaintiff's cell phone, which allegedly shows that Plaintiff was texting at the time of the crime; and Feliciano's own knowledge that he lied in identifying Plaintiff—all of which was available to authorities or Feliciano at some point during the prosecution.[4]  As Plaintiff has met the "malice" requirement for his malicious prosecution claim, Plaintiff meets the culpability requirement with respect to each Defendant for the same reasons.  This claim survives.

### III. Fabrication of Evidence

Defendants offer no basis to dismiss Plaintiff's fabrication of evidence claim.  "When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983."  *Ricciuti*, 124 F.3d at 130; *see also Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012) (summary order); *Deskovic v. City of Peekskill*, 894 F. Supp. 2d 443, 452 (S.D.N.Y. 2012); *cf. Zahrey*, 221 F.3d at 356 ("The right is appropriately identified as the right not to be deprived of liberty as a result of *any government officer's* fabrication of evidence.").  Probable cause for Plaintiff's detention is not a defense.  *Jovanovic*, 486 F. App'x at 152; *Deskovic*, 894 F. Supp. 2d at 452.  Defendants quibble over the correct constitutional source of this claim, but that is no basis in itself for dismissal.[5]  Defendants further assert that the

---

[4] Defendants dispute whether the video and cell phone would have established Plaintiff's innocence, but based on the allegations, it is reasonable to infer that they would have, and the Court must grant the Plaintiff reasonable inferences in deciding a Rule 12(b)(6) motion.

[5] In various papers, Plaintiff has framed this claim as the denial of a right to a fair trial, a violation of the substantive component of the due process clause, and a violation of the procedural component of the due process clause.  Defendant argues that *Russo* held that a fabrication of evidence claim cannot be maintained under the Fourteenth Amendment and must instead be brought under the Fourth Amendment.

The Second Circuit in *Ricciuti* held that the use of fabricated evidence denies an accused the right to a fair trial, a Sixth Amendment right.  124 F.3d at 130.  The Second Circuit recently confirmed, albeit in a summary order,

16

claim is meritless "for the same reasons that [Plaintiff's] malicious prosecution claim is meritless." But Plaintiff's malicious prosecution claim is not meritless. Defendants do not address the line of cases suggesting that there are no damages unless the allegedly tainted evidence is introduced at trial. *See, e.g.*, *Thompson*, 603 F. Supp. 2d at 658 (citing *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)). Because that issue has not been briefed by either party, the Court will not dismiss on that basis. Accordingly, the Sixth Amendment fabrication of evidence claim survives.

## IV. False Imprisonment

Plaintiff's false imprisonment claim should be dismissed. False imprisonment and malicious prosecution are "kindred actions" but each "protects a different personal interest." *Broughton v. State*, 37 N.Y.2d 451, 456 (1975). An action for false imprisonment allows for recovery of damages for an unlawful incarceration only from the moment of imprisonment "to the time of arraignment or indictment[,] whichever occurs first." *Id.* at 459. If the confinement

---

that the use of fabricated evidence implicates the right to a fair trial. *Jovanovic*, 486 F. App'x at 152. A few years after *Ricciuti*, the Second Circuit in *Zahrey* explained that when a prosecutor fabricates evidence and submits it to a grand jury to secure an indictment, the arrestee suffers a deprivation of liberty without due process. *Zahrey*, 221 F.3d at 348-49. It appears that the use of fabricated evidence can implicate both the Sixth and the Fourteenth Amendment. It can also implicate the Fourth Amendment insofar as a seizure based on fabricated evidence can be unreasonable or without probable cause.

    Plaintiff cannot maintain a Fourteenth Amendment claim. *Zahrey* did not specify whether the use of fabricated evidence implicates the substantive or procedural component of the Due Process Clause, but that is irrelevant. If characterized as a substantive due process claim, the claim would be barred by the "explicit textual source" doctrine. "[T]he Supreme Court has repeatedly held that '[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of governmental behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Bryant v. City of New York*, 404 F.3d 128, 135 (2d Cir. 2005) (quoting *Albright v. Oliver*, 510 U.S. 266, (1994)). Plaintiff claims that the fabrication of evidence (1) denied him a fair trial and (2) subjected him to an unreasonable seizure. The Court will not rely on general notions of substantive due process where (1) the Sixth Amendment protects the right to a fair trial, and (2) the Fourth Amendment protects against unreasonable seizures. Plaintiff's citation to pre-*Albright* and pre-*Bryant* cases does not alter this conclusion.

    If characterized as a procedural due process claim, the claim would be barred by the "adequate state court remedy" doctrine because the availability of a New York state action for false arrest or wrongful prosecution to remedy the deprivation, which is a random act, is all the process that is due under the Fourteenth Amendment. *See Ambrose v. City of New York*, 623 F. Supp. 2d 454, 474 & n.9 (S.D.N.Y. 2009); *Albright*, 510 U.S. at 283-86 (Kennedy, J., concurring).

is "otherwise privileged," a false imprisonment claim will not lie. *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003). Plaintiff was indicted for the robbery-assault on May 3, 2012, which is the controlling date because it occurred before his May 16, 2012 arraignment. Plaintiff was initially incarcerated on February 1, 2012 pursuant to the petition for violation of probation. Plaintiff ultimately received a 100-day custodial sentence, the validity of which is not in question, running from that date until May 11, 2012. In other words, the entire period of pre-indictment incarceration is attributable to Plaintiff's valid sentence for his probation violation and is therefore "otherwise privileged." The claim for false imprisonment must be dismissed, but this has no effect on Plaintiff's other claims.

## V.     Miscellaneous Claims

Plaintiff pays lip service in the Complaint to abuse of process, Fifth Amendment, and Confrontation Clause claims, but does not address them in his briefings. To the extent that Plaintiff still intends to bring these claims, the Fifth Amendment claims are dismissed because they can be brought only against federal officials or employees, *Pub. Utilities Comm'n of D.C. v. Pollak*, 343 U.S. 451, 461 (1952), the Confrontation Clause claims are dismissed because the right to confront witnesses "does not attach until there is a trial," *Soto v. City of New York*, No. 04 CIV.4559 DC, 2005 WL 66893, at *5 (S.D.N.Y. Jan. 11, 2005), and the abuse of process claim is dismissed as against Lore for failure to plead a collateral objective on the part of Lore, *see Hoffman v. Town of Southampton*, 893 F. Supp. 2d 438, 448 (E.D.N.Y. 2012) ("[T]he Second Circuit expressly distinguishes between a 'malicious motive' and an 'improper purpose'; only the latter suffices to meet the 'collateral objective' prong of the abuse of process standard." (quoting *Savino*, 331 F.3d at 77)), *aff'd sub nom. Peter L. Hoffman, Lotte, LLC v. Town of Southampton*, 523 F. App'x 770 (2d Cir. 2013).

## CONCLUSION[6]

For the foregoing reasons, Defendants' motions to dismiss are GRANTED in part and DENIED in part in accordance with this Opinion and Order. Defendants shall have until 30 days from the date of this Order to file responsive pleadings. An initial case management and scheduling conference pursuant to Fed. R. Civ. P. 16 is scheduled for August 14, 2015 at 10 a.m., at the United States Courthouse, 300 Quarropas Street, Courtroom 218, White Plains, New York 10601. The parties shall confer in accordance with Fed. R. Civ. P. 26(f) at least 21 days prior to the conference and attempt in good faith to agree upon a proposed discovery plan that will ensure trial readiness within six months of the conference date. The parties shall also complete a Civil Case Discovery Plan and Scheduling Order and bring it to the conference. The Court respectfully directs the Clerk to terminate the motions at ECF Nos. 22 and 25.

Dated: June 19, 2015  
White Plains, New York

SO ORDERED:

_____  
NELSON S. ROMÁN  
United States District Judge

---

[6] The Court has considered Defendants' remaining arguments, including with respect to qualified immunity, punitive damages, and attorney's fees, and finds them unpersuasive.